Gary S. Lincenberg – State Bar No. 123058
gsl@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Anjeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Rabbi Amitai Yemini and Chabad Israeli Center

FILED
2010 JUN 16 PM 4:03
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

United States of America,

Plaintiff,

vs.

Alfred Nash Villalobos,

Defendant.

CASE NO. CR 09-824 GHK

**Interested Non-Parties Chabad Israeli Center and Rabbi Amitai Yemini's Position Regarding Attorney-client Privilege And Work Product;**

**Declaration of Gary S. Lincenberg**

**Date: TBD**
**Place: Ctrm of Hon. George H. King**

# TABLE OF CONTENTS

**Page**


I INTRODUCTION ..... 1

II BACKGROUND ..... 2

III ARGUMENT ..... 3

A. Mr. Gluck and Rabbi Yemini will testify about substantial non-privileged communications they had about the relevant issues ..... 3

B. Mr. Villalobos's lawyers need not invade any privilege in order to cross-examine the witnesses about Ms. Anjel's employment or Rabbi Yemini's cooperation ..... 6

1. Mr. Villalobos's lawyers need not invade the privilege to explore either Rabbi Yemini's or Mr. Gluck's credibility ..... 6

2. Mr. Villalobos's lawyers need not invade the privilege to explore "Mr. Gluck's biases and motivations for cooperating and testifying" ..... 7

C. As a matter of law, the privilege does not yield in this case ..... 8

IV CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Blackwell v. Franzen*, 688 F.2d 496 (7th Cir. 1982) .......... 9

*Jenkins v. Wainwright*, 763 F.2d 1390 (11th Cir. 1985) .......... 9

*Mills v. Singletary*, 161 F.3d 1273 (11th Cir. 1998) .......... 9

*Murdoch v. Castro*, 365 F.3d 699 (9th Cir. 2004) .......... 8, 9, 10

*Murdoch v. Castro*, 489 F.3d 1063 (9th Cir. 2007) .......... 10

*Murdoch v. Castro*, 546 F.3d 1051 (2008) .......... 10

*United States v. Fox*, 396 F.3d 1018 (8th Cir. 2005) .......... 9

*United States v. Rainone*, 32 F.3d 1203 (7th Cir. 1994) .......... 9

*United States v. Smith*, 454 F.3d 707 (7th Cir. 2006) .......... 9

*United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999) .......... 4

## Other Cites

Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, 246 (5th ed. 2007) .......... 4

# I

# INTRODUCTION

In 2008, non-parties Chabad Israeli Center and Rabbi Amitai Yemini[1] retained the Bird Marella firm in connection with a government investigation. In the course of the investigation, defendant Alfred Villalobos communicated illegal, extortionate demands to Rabbi Yemini and to Benjamin Gluck of the Bird Marella firm. Mr. Gluck reported those communications to the United States Attorney's Office. At the government's request, Mr. Gluck participated in monitored communications with Mr. Villalobos. After Mr. Villalobos came to Bird Marella's office and took an envelope containing $50,000 in cash in exchange for his promise to have his client testify in a certain manner, FBI agents arrested Mr. Villalobos.

This filing seeks to protect Rabbi Yemini from defendant Alfred Villalobos's attempt to distract the jury from his own misconduct at the expense of Rabbi Yemini's attorney-client privilege.[2] Though Mr. Villalobos's offense is predicated on his own words and actions, Mr. Villalobos pretends that disclosure of Mr. Gluck's privileged communications with Rabbi Yemini can magically change Mr. Villalobos's intent. This is a complete non-sequitur, and does not give Mr. Villalobos the right to vitiate Rabbi Yemini's attorney-client privilege.[3] Moreover, Mr. Villalobos already has the opportunity to thoroughly cross-examine Rabbi

---

[1] For convenience and because Rabbi Yemini is the leader of the Center, the remainder of this brief will refer to just Rabbi Yemini. However, the Center is also a holder of the protections discussed here and the arguments are made on behalf of both.

[2] For convenience, when this brief refers to the privilege, it means both the attorney-client privilege and the work product doctrine.

[3] Because Rabbi Yemini's concern is with the privilege, the discussion below does not address another obvious problem with the defense's request, namely, even if non-privileged, the testimony would be irrelevant.

Yemini and Mr. Gluck on the very subjects his counsel claims to need. There is simply no justification, as a matter of evidence or law, to violate Rabbi Yemini's privilege.

On May 28, 2010, the government and Mr. Villalobos's lawyers submitted a joint filing addressing the government's motion *in limine* to preclude questions at trial that invade the attorney-client privilege ("May 28 Filing," or "Opposition" where referring to Villalobos's section of the joint filing). Because this privilege is held by Rabbi Yemini and because Mr. Villalobos's lawyers have argued the government cannot assert it, this filing presents Rabbi Yemini's position.

Rabbi Yemini's position is as follows: (1) many of the communications on the subject at issue are not privileged and Mr. Gluck and Rabbi Yemini are prepared to testify about them; (2) Mr. Villalobos's counsel do not need to invade the privilege or work product protections in order to defend this case; and (3) Mr. Villalobos does not have a legal right to invade Yemini's privilege.

## II

## BACKGROUND

Rabbi Yemini was the subject of a grand jury investigation relating to certain foreign workers who obtained visas based on their association with the Chabad Israeli Center. A central issue in the investigation was the extent to which the foreign workers actually worked there. Rabbi Yemini retained Mr. Gluck and Bird Marella to represent him. In the course of this pre-indictment investigation, numerous privileged communications took place.

In early 2009, Mr. Villalobos contacted Mr. Gluck concerning his client Orit Anjel, one of the foreign workers at issue in the investigation. During the course of these communications, Mr. Villalobos stated that Ms. Anjel had worked 40 hours a week for the Center and that Rabbi Yemini had forced her to forfeit her pay to him. Mr. Villalobos also informed Mr. Gluck that Ms. Anjel was scheduled to be interviewed by the government and that unless Rabbi Yemini paid $120,000, she

would tell the government this story. Eventually, Mr. Villalobos informed Mr. Gluck that Ms. Anjel was going to be interviewed the next day.

In light of this, Rabbi Yemini authorized Mr. Gluck to communicate to the government that the story they were about to hear from Ms. Anjel was not true and that she was threatening to tell the story because Rabbi Yemini refused to pay her $120,000. Shortly after this communication, the government asked Mr. Gluck if he would be willing to cooperate with the investigation of Mr. Villalobos. Mr. Gluck did so and all further communications between Mr. Gluck and Mr. Villalobos either were in writing or were recorded. With Rabbi Yemini's authorization, Mr. Gluck informed the government of the underlying facts concerning the Center's relationship with Ms. Anjel. Rabbi Yemini next met with the government team investigating the underlying visa issue and directly informed them of these same facts. Rabbi Yemini later met with the team investigating Mr. Villalobos and again directly disclosed the same facts.

## III

## ARGUMENT

### A. Mr. Gluck and Rabbi Yemini will testify about substantial non-privileged communications they had about the relevant issues

In an effort to address defense counsel's concerns while protecting Rabbi Yemini's privilege, on May 26, 2010, the Bird Marella firm sent a letter to all counsel noting the following:

> If called as a witness, Mr. Gluck will testify as to (a) any information that Mr. Gluck provided to third parties at the request of Rabbi Yemini, including the prosecutors, agents, or any other party; (b) any facts that Mr. Gluck transmitted to Rabbi Yemini; and (c) Mr. Gluck's state of mind with respect to his contact and cooperation with the government. If Rabbi Yemini is called as a witness, he will testify as to his state of mind and any facts that Mr. Gluck may have relayed to him. Based on

> the attorney-client privilege and work product doctrine, neither Mr. Gluck nor Rabbi Yemini will testify about legal analysis, legal advice or information provided by Rabbi Yemini to Mr. Gluck that was not intended for disclosure to a third party.

Letter of May 26, 2010, from Bird Marella to AUSA Beong-Soo Kim and Brian Sun (attached as Exh. A).[4] As further set out in the letter, this suggestion was on the condition that the Court rule that the testimony as described will not result in a waiver of the privilege.

Since the May 28 Filing, counsel for Rabbi Yemini has communicated with government counsel and defense counsel to try to reach an agreement about the privilege issue. Following discussions with counsel for Villalobos, in a June 11, 2010, email, Bird Marella clarified the three proposed areas of testimony set out in the letter:

> This is in response to Brian's request for clarification of Items A, B, and C of the May 26, 2010 letter to Kim, Sun, and Scheper:
>
> "(a) any information that Mr. Gluck provided to third parties at the request of Rabbi Yemini, including the prosecutors, agents, or any other party:" Mr. Gluck would testify regarding communications Rabbi Yemini authorized Mr. Gluck to convey to the government, Villalobos or third parties. The 302's and notes produced in discovery detail those communications. We object to questions which elicit legal analysis, client consultation, impressions and attorney-client

---

[4] Information provided to an attorney with the intention that it be disclosed to a third party is not protected by the attorney-client privilege. *See, e.g., United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1204-05 (C.D. Cal. 1999) (Pregerson, J.,) (citing cases); Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, 246 (5th ed. 2007) (citing cases).

communication of information that was never conveyed to the government or third parties .

"(b) any facts that Mr. Gluck transmitted to Rabbi Yemini:" Mr. Gluck had discussions with Mr. Villalobos on Rabbi Yemini's behalf. He conveyed to Rabbi Yemini factual reports of these discussions. He would testify about these reports. Similarly, Mr. Gluck had discussions with the Government on Rabbi Yemini's behalf and conveyed to Rabbi Yemini factual reports of these discussions. He would testify about these reports. Mr. Gluck will not testify to any accompanying analysis of the issues and legal advice. To the extent that Mr. Gluck learned anything else during any internal investigation, for example, this is protected attorney work product unless it falls within Item A above.

"(c) Mr. Gluck's state of mind with respect to his contact and cooperation with the government." As to Mr. Gluck's state of mind, Mr. Gluck would testify about his state of mind with respect to the communications disclosed pursuant to Item A above. Mr. Gluck will not testify about his state of mind with respect to matters that remain protected by the privilege or the work product doctrine.

Because a motivated party could argue that such testimony constitutes a waiver, as stated in the May 26 letter, we offer this subject to an agreement that the parties agree and the Court confirms that such testimony does not constitute a waiver of the attorney client privilege or work product protections.

Please let me know if that is acceptable.

Email of June 11, 2010, from Gary S. Lincenberg to AUSA Beong-Soo Kim and Brian Sun (Attached as Exh. B.) This proposal was intended to provide Mr. Villalobos's counsel with more than what they may be entitled to while obviating any invasion of Rabbi Yemeni's privilege.

**B. Mr. Villalobos's lawyers need not invade any privilege in order to cross-examine the witnesses about Ms. Anjel's employment or Rabbi Yemini's cooperation**

Mr. Villalobos's lawyers claim two reasons to invade the privilege. Neither reason succeeds.

**1. Mr. Villalobos's lawyers need not invade the privilege to explore either Rabbi Yemini's or Mr. Gluck's credibility**

Villalobos argues that the extent to which Ms. Anjel worked for the Center will be an issue in this case: "the defense believes [Ms. Anjel] did significant work for the Center." Opposition at 18:24. Villalobos claims a need to invade the privilege in order to find out whether Rabbi Yemini told Mr. Gluck that Ms. Anjel did or did not work for the Center. Opposition at 17:23.

According to Villalobos, if it is disclosed that Rabbi Yemini told Mr. Gluck that Ms. Anjel *did not* work 40 hours per week at the Center, Rabbi Yemini could then be impeached. But Rabbi Yemini directly told the government on more than one occasion that Ms. Anjel did not work 40 hours. Thus, even if this were relevant, he can be cross-examined about those statements. Furthermore, because Rabbi Yemini authorized Mr. Gluck to relay that information to the government, those statements are not privileged, which means Rabbi Yemini and Mr. Gluck can be cross-examined about them as well. Thus, both witnesses will be subject to cross-examination on this issue and no privilege need be invaded.

Villalobos suggests that if it is disclosed that Rabbi Yemini told Mr. Gluck that Ms. Anjel *did* work 40 hours, this would mean that Rabbi Yemini and Mr. Gluck then lied to the government about it. Opposition at 19:2. But this false suggestion suffers the same defect as the previous one: Mr. Villalobos's lawyers know that they can already cross-examine Rabbi Yemini and Mr. Gluck about their statements to the government as well as communications from Rabbi Yemini to Mr. Gluck that were intended to be relayed to the government. Their current request to

invade the privilege is based on nothing more than sheer speculation that perhaps the witness once told his lawyer something different from what he's testifying on the stand. If a defense counsel were permitted to ask the question – "Did you ever tell your lawyer something different from what you're testifying today?" – the attorney-client privilege would be vitiated on a daily basis in trials throughout the country. Especially where, as here, the witness is already subject to cross-examination based on non-privileged statements, this speculation does not support an invasion of the privilege.

In short, Mr. Villalobos's lawyers can cross-examine Rabbi Yemini and Mr. Gluck about what they told the government and about what Rabbi Yemini told Mr. Gluck in order to have Mr. Gluck convey it to the government. This is ample material for cross-examination. An invasion of the privilege is neither necessary nor justified.

**2. Mr. Villalobos's lawyers need not invade the privilege to explore "Mr. Gluck's biases and motivations for cooperating and testifying"**

Villalobos's counsel assert that they are entitled to explore Mr. Gluck's motives for informing the government about what Mr. Villalobos was doing and Mr. Gluck's motives for cooperating with the investigation of Mr. Villalobos. Opposition at 15:14 ("It follows that the defense is entitled to explore on cross-examination Mr. Gluck's biases and motivations for cooperating and testifying."), 15:21, 16:2, 16:21. Villalobos's counsel essentially claim that they need to be able to determine Rabbi Yemini's potential exposure from the visa investigation in order to challenge Mr. Gluck's testimony by suggesting that he was (and is) willing to lie to protect him.

Apart from being wrong, this assertion is irrelevant to the issue at hand, namely, whether Villalobos has the right to violate Rabbi Yemini's attorney-client privilege. To probe motive, Mr. Villalobos's counsel can cross-examine Rabbi

Yemini about his understanding of his criminal exposure and can cross-examine Mr. Gluck about all communications Rabbi Yemini made with him to be conveyed to Mr. Villalobos or the government. But Mr. Villalobos's lawyers cannot ask: "What did your lawyer tell you about your criminal exposure?" They cannot ask: "What did your lawyer tell you about the potential benefits of cooperation?" Villalobos cites no law suggesting that such questions are permitted.

**C. As a matter of law, the privilege does not yield in this case**

Villalobos provides no legal support for his attempt to invade Yemini's privilege. Instead, he cites a case noting that "the attorney-client privilege . . . *might* have to yield *in a particular* case." Opposition at 21:26 (citing *Murdoch v. Castro*, 365 F.3d 699, 903 (9th Cir. 2004)). But beyond this theoretical possibility, even a cursory review of *Murdoch* shows that, whatever else, this is not such a case.

*Murdoch* was a murder case based largely on accomplice testimony some eleven years after the event. The Ninth Circuit noted that "the record strongly suggests that without [the] accomplice testimony, the prosecution's case against Murdoch was weak." *Id.*, 365 F.3d at 701. Just before opening statements, the prosecution revealed to the court and defense counsel that she had discovered "[t]he existence of a letter, apparently written by [the accomplice] to his attorney, in which [the accomplice] allegedly exonerated Murdoch and claimed that his own statements to the contrary had been coerced by the police." *Id.* The accomplice's lawyer invoked the attorney-client privilege and the trial court took possession of the letter but refused to disclose it to Murdoch's defense team. The accomplice testified against Murdoch and Murdoch was convicted.

On habeas appeal, the Ninth Circuit described the issue: "Today, we address a situation *where a substantial showing has been made* that, depending on the content of [the accomplice's] letter, the Confrontation Clause and attorney-client privilege are potentially at odds – a set of facts the Supreme Court has not yet examined." *Id.* at 702 (emphasis added). This highlighted phrase is the key to *Murdoch*'s holding;

*Murdoch* held only that *in the proper case,* the Confrontation Clause *might* trump the privilege and it remanded the matter to determine whether *Murdoch* was such a case. Since the state appellate court and the federal habeas court had not reviewed the letter, *Murdoch* sent the matter back for such review. *Id.*, 365 F.3d at 706.

But *Murdoch* makes abundantly clear that the privilege *does not* yield just because a defense attorney demands discovery of privileged communications:

- First, *Murdoch* was based on the "substantial showing" that the privileged information at issue was crucial cross-examination. *Id.*, 365 F.3d at 702. It did not hold the privilege yields to defense counsel's sheer speculation that perhaps an invasion of the privilege might turn up something interesting. The latter, however, is all Villalobos can assert here.
- Second, *Murdoch* holds that the privilege need not yield when the defense has other bases on which to cross-examine. Thus, the court noted with approval Seventh and Eleventh Circuit cases in which the courts applied the logic adopted by *Murdoch* but found no error in the protection of the privilege because the defense had sufficient opportunity to cross-examine the witness based on other material. *Id.* 365 F.3d at 703 (*citing United States v. Rainone*, 32 F.3d 1203 (7th Cir. 1994), *Mills v. Singletary*, 161 F.3d 1273 (11th Cir. 1998), and *Blackwell v. Franzen*, 688 F.2d 496 (7th Cir. 1982), all finding no error in refusing to invade the privilege because the defense had alternative bases for effective cross-examination).[5] As discussed earlier, Mr.

---

[5] Many other courts reach the same conclusion. *See e.g., United States v. Smith*, 454 F.3d 707 (7th Cir. 2006) (affirming conviction because even without privileged material, the defense was able to question witness about biases arising from plea deal); *United States v. Fox*, 396 F.3d 1018 (8th Cir. 2005) (same); *Jenkins v. Wainwright*, 763 F.2d 1390, 1392-93 (11th Cir. 1985) ("In sum, the cross-examination was more than adequate to expose the witnesses' bias and self-interest. The abrogation of the attorney-client privilege was unnecessary to present a (footnote continued)

Villalobos's counsel have ample non-privileged bases for effective cross-examination of both Rabbi Yemini and Mr. Gluck.

- Third, *Murdoch* never endorsed the cavalier invasion of the privilege that Villalobos demands here. Instead, *Murdoch* first required an *in camera* review by the court to determine whether the material needed to be disclosed "as applied to the totality of the facts in this case." *Id.*, 365 F.3d at 706.[6] This is a far cry from Villalobos's demand that he should be permitted to "explore" speculative theories by questioning a witness about privileged communications. Such a public fishing expedition in privileged waters is endorsed by no court.

In short, Villalobos fails to cite legal authority that would support the notion that the privilege should be invaded here. Quite the contrary, the clear authority is that with no showing whatsoever that the privileged material would provide otherwise unavailable crucial cross-examination, the demand to invade the privilege must be rejected.

## IV

## CONCLUSION

Mr. Villalobos has ample material for cross-examination without invading any privilege. Even *Murdoch*, the only case cited by Villalobos, holds that privileges do not yield where there is nothing but speculation that the invasion might

---

complete picture to the jury.").

[6] In fact, upon remand, the District Court denied relief because *in camera* review of the letter showed that it had low probative value in light of the other evidence in the case. The Ninth Circuit affirmed because "the jury was provided ample information on which to measure [the accomplice's] biases." *Murdoch v. Castro*, 489 F.3d 1063, 1069 (9th Cir. 2007). The Ninth Circuit later granted *en banc* review in *Murdoch v. Castro*, 546 F.3d 1051 (2008), and the decision *en banc* has not yet issued.

yield impeachment. Separately, these factors each mean that the privilege in this case must be protected. Together, they merely strengthen this conclusion.

Rabbi Yemini respectfully requests that:

1) the Court preclude any questions that invade the attorney-client privilege or the work product doctrine;

2) the Court implement a procedure by which privilege objections to particular questions or areas of questioning may be ruled on in advance; and

3) the Court rule that the testimony described in the Bird Marella proposal would not constitute a waiver of the attorney-client privilege or the work product doctrine.

DATED: June 16, 2010

Gary S. Lincenberg
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS & LINCENBERG, P.C.

By: ______________________
Gary S. Lincenberg
Attorneys for Rabbi Amitai Yemini and Chabad Israeli Center

**DECLARATION OF GARY S. LINCENBERG**

I, Gary S. Lincenberg, declare as follows:

1. I am an active member of the Bar of the State of California and a Principal with Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, A Professional Corporation, attorneys for Rabbi Amitai Yemini and Chabad Israeli Center. Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2. Attached hereto as Exhibit A is a copy of a May 26, 2010, letter from my recently retired partner Jason D. Kogan to AUSA Beong-Soo Kim and Brian Sun.

3. Attached hereto as Exhibit B is a copy of a June 11, 2010, email from me to AUSA Beong-Soo Kim and Brian Sun.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on June 16, 2010, at Los Angeles, California.

Gary S. Lincenberg

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

A PROFESSIONAL CORPORATION

Jason D. Kogan
jdk@birdmarella.com

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone (310) 201-2100
Facsimile (310) 201-2110
www.BirdMarella.com

May 26, 2010

File 3531.2

**VIA E-MAIL AND U.S. MAIL**

Beong-Soo Kim
Assistant United States Attorney
1100 United States Courthouse
312 N. Spring Street
Los Angeles, CA 90012

Brian A. Sun
Frederick D. Friedman
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

David C. Scheper
Angela M. Machala
Scheper Kim & Overland LLP
One Bunker Hill
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071

Re: **United States v. Villalobos**

Dear Messrs. Kim, Sun and Scheper:

I have informed Mr. Kim that if Benjamin Gluck, a member of this firm, is called as a witness in this matter, he will assert the attorney-client privilege as to his communications with this firm's client, Rabbi Amitai Yemini, and invoke the protection of the work product doctrine. In addition, I told Mr. Kim that if the issues relating to Mr. Gluck's testimony were not resolved prior to trial, this firm will raise them with the court prior to Mr. Gluck providing any testimony in order to protect Rabbi Yemini's attorney-client privilege and attorney work product.

Sharon Ben-Shahar
Terry W. Bird
Joel E. Boxer
Eric E. Bronson
Paul S. Chan
Jennifer S. Chang
Mark T. Drooks
Thomas R. Freeman
Benjamin N. Gluck
David I. Hurwitz
Bruce L. Ishimatsu
Jason D. Kogan
Benjamin D. Lichtman
Gary S. Lincenberg
Vincent J. Marella
Marc E. Masters
Bonita D. Moore
Ronald J. Nessim
Angela E. Oh
Thomas V. Reichert
Jean Y. Rhee
Ekwan E. Rhow
John K. Rubiner
Peter J. Shakow
Michelle C. Tam
Dorothy Wolpert
Steven K. Yoda

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

The government has moved in limine to preclude the questioning of Mr. Gluck concerning privileged communications and work product, primarily on the grounds that Mr. Gluck's privileged communications with Rabbi Yemini and Mr. Gluck's work product are irrelevant, and in any event, should be precluded by Rule of Evidence 403. Mr. Villalobos' opposition to the government's motion in limine argues that Mr. Villalobos should be permitted to eviscerate the protections afforded by the attorney-client privilege and the work product doctrine.

In an effort to clarify this issue while protecting the interests of all parties, I suggest the following solution: If called as a witness, Mr. Gluck will testify as to (a) any information that Mr. Gluck provided to third parties at the request of Rabbi Yemini, including the prosecutors, agents, or any other party; (b) any facts that Mr. Gluck transmitted to Rabbi Yemini; and (c) Mr. Gluck's state of mind with respect to his contact and cooperation with the government. If Rabbi Yemini is called as a witness, he will testify as to his state of mind and any facts that Mr. Gluck may have relayed to him. Based on the attorney-client privilege and work product doctrine, neither Mr. Gluck nor Rabbi Yemini will testify about legal analysis, legal advice or information provided by Rabbi Yemini to Mr. Gluck that was not intended for disclosure to a third party.

This proposal is made on the condition that the court rules that the above described proposal will not result in a waiver of the attorney client privilege or work product protection.

I believe this approach best affords Rabbi Yemini the protections of the attorney-client privilege and the work product doctrine and allows the government and Mr. Villalobos to pursue the essential lines of testimony that they may seek from Mr. Gluck and Rabbi Yemini at trial.

If you have any questions, please let me know.

Sincerely,

Jason D. Kogan

JDK:em

283918.2

**Benjamin N. Gluck**

**From:** Gary S. Lincenberg
**Sent:** Friday, June 11, 2010 1:26 PM
**To:** 'beong-soo.kim@usdoj.gov'; 'Brian Sun (basun@jonesday.com)'
**Subject:** Proposed agreement re Benjamin Gluck's testimony

Brian and Beong:

This is in response to Brian's request for clarification of Items A, B, and C of the May 26, 2010 letter to Kim, Sun, and Scheper:

"(a) any information that Mr. Gluck provided to third parties at the request of Rabbi Yemini, including the prosecutors, agents, or any other party ": Mr. Gluck would testify regarding communications Rabbi Yemini authorized Mr. Gluck to convey to the government, Villalobos or third parties. The 302's and notes produced in discovery detail those communications. We object to questions which elicit legal analysis, client consultation, impressions and attorney-client communication of information that was never conveyed to the government or third parties .

"(b) any facts that Mr. Gluck transmitted to Rabbi Yemini": Mr. Gluck had discussions wiht Mr. Villalobos on Rabbi Yemini's behalf. He conveyed to Rabbi Yemini factual reports of these discussions. He would testify about these reports. Similarly, Mr. Gluck had discussions with the Government on Rabbi Yemini's behalf and conveyed to Rabbi Yemini factual reports of these discussions. He would testify about these reports. Mr. Gluck will not testify to any accompanying analysis of the issues and legal advice. To the extent that Mr. Gluck learned anything else during any internal investigation, for example, this is protected attorney work product unless it falls within Item A above.

"(c) Mr. Gluck's state of mind with respect to his contact and cooperation with the government. " As to Mr. Gluck's state of mind, Mr. Gluck would testify about his state of mind with respect to the communications disclosed pursuant to Item A above. Mr. Gluck will not testify about his state of mind with respect to matters that remain protected by the privilege or the work product doctrine.

Because a motivated party could argue that such testimony constitutes a waiver, as stated in the May 26 letter, we offer this subject to an agreement that the parties agree and the Court confirms that such testimony does not waive constitute a waiver of the attorney client privilege or work product protections.

Please let me know if that is acceptable.

Sincerely,

Gary

***Gary S. Lincenberg***

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg
1875 Century Park East, Suite 2300
Los Angeles, CA 90067

phone (310) 201 2100
fax (310) 201 2110

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1875 Century Park East, 23rd Floor, Los Angeles, California 90067-2561.

On June 16, 2010, I served the following document(s) described as **INTERESTED NON-PARTIES CHABAD ISRAELI CENTER AND RABBIA AMITAI YEMINI'S POSITION REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT; DECLARATION OF GARY S. LINCENBERG** on the interested parties in this action as follows:

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address lak@birdmarella.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and of my own personal knowledge.

Executed on June 16, 2010, at Los Angeles, California.

Lisa A. Lambrix

Lisa Lambrix

**SERVICE LIST**

**Case No. CR09-1191-SVW**

Joseph N. Akrotirianakis
AUSA – Office of US Attorney
312 North Spring Street, 12th Floor
Los Angeles, CA 90012
Joseph.Akrotirianakis@usdoj.gov

Attorneys for Plaintiff United States of America

David C. Scheper
Angela Machala
Scheper Kim & Harris, LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071
dscheper@scheperkim.com
amachala@scheperkim.com

Attorneys for Defendant Alfred Nash Villalobos

Brian A. Sun
Frederick D. Friedman
Jones Day
555 West Fifth Street, 50th Floor
Los Angeles, Ca 90071
basun@jonesday.com
ffriedman@jonesday.com

Attorneys for Defendant Alfred Nash Villalobos