Richard M. Steingard (State Bar No. 106374)
Stephen B. Sadowsky (State Bar No. 90862)
LIGHTFOOT STEINGARD
& SADOWSKY LLP
800 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450
Email: RSteingard@LSSLaw.com

Attorneys for Defendant
ALFRED NASH VILLALOBOS

Gary Lincenberg (State Bar No. 123058)
BIRD MARELLA BOXER WOLPERT
NESSIM DROOKS & LINCENBERG
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: gsl@birdmarella.com

Attorneys for BIRD MARELLA AND
CHABAD ISRAEL CENTER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFRED NASH VILLALOBOS,<br><br>Defendant. | Case No. CR 09-00824-GHK<br><br>**JOINT SUBMISSION RE DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM** |

///

///

Defendant Alfred Nash Villalobos, by and through his attorney of record, Richard M. Steingard and Stephen B. Sadowsky, and the Law Firm of Bird Marella Boxer Wolpert Nessim Drooks & Lincenberg and Chabad Israeli Center, by and through Gary Lincenberg, hereby submit this Joint Submission Re Defendant's Motion to Compel Compliance with Subpoena Duces Tecum.

Respectfully submitted,

Dated: March 17, 2011    LIGHTFOOT STEINGARD & SADOWSKY LLP

By: /S/ - *Richard M. Steingard*
Richard M. Steingard
Attorneys for Defendant
Alfred Nash Villalobos

Dated: March 17, 2011    BIRD MARELLA BOXER WOLPERT
NESSIM DROOKS & LINCENBERG

By: /S/ - *Gary Lincenberg*
Gary Lincenberg
Attorneys for Bird Marella
and Chabad Israel Center

1

# I.

# JOINT STATEMENT AND INTRODUCTION

On or about January 21, 2010, defendant Alfred Villalobos, through prior counsel, sought judicial authorization for the early return of subpoenas issued to the Law Firm of Bird Marella Boxer Wolpert Nessim Drooks & Lincenberg (hereinafter "Bird Marella") and Chabad Israel Center (hereinafter "Chabad"). The Court authorized the issuance of the subpoenas but, in doing so, stated that Bird Marella and Chabad could also provide the produced materials to the government. [Exhibit A][1]

The subpoenas issued by the defendant, attached as Exhibit B, required the production of a broad array of items. Bird Marella and Chabad have produced responsive materials, but some materials were redacted (e.g., billing records) or withheld from production (e.g., handwritten notes, emails, etc.). Bird Marella has produced a privilege log, attached as Exhibit C, identifying the withheld items.

On January 28, 2011, counsel met and conferred in person to discuss the production of documents and any unresolved issues. Both before and after that meeting, counsel conferred on numerous occasions and were able to resolve most issues. However, the parties are unable to agree on certain matters that require the Court's guidance.

The outstanding issues are: (1) whether the privilege log should include dates for all undated documents; (2) whether some of the documents listed in the privilege log are protected by the attorney-client privilege or work product privilege; and (3) whether additional information on the billing records is also subject to disclosure. These issues are addressed seriatim.

---

[1] The defendant's request for early return of the subpoenas and the Court's order granting the request were filed under seal. Because counsel for Bird Marella advises that it provided the government with all of the materials produced to the defense, the parties do not believe this pleading or the resolution of this motion need be under seal.

2

## II.

## PRIVILEGE LOG

### A. Undated or Partially Dated Entries on Privilege Log

#### 1. Joint Statement of the Issue

Several entries on the privilege log do not bear any date, or only a partial date. (##1-10, 30, 45.)[2] Bird Marella explained that the underlying documents do not bear a specific date, or only bear a partial date, and declined the defense's request that it approximate a date for each of the undated or partially dated documents. Defendant Villalobos requests that the Court order Bird Marella to provide a date or approximate date for each entry on the privilege log.

#### 2. Defendant's Position

The Ninth Circuit has recognized that a privilege log appropriately includes "the date the document was generated, prepared, or dated." *In Re Grand Jury*, 974 F.2d 1068, 1071 (9th Cir. 1992), *citing Dole v. Milanos*, 889 F.2d 885, 888 n.3 (9th Cir. 1989). Further, the date of a privileged communication is not privileged and, therefore cannot be withheld from production. *Johnson v. Liberty Mut. Fire Ins.*, 2009 WL 3530379 (D.Colo. 2009) ("The date on which a privileged communication took place, and the people involved in the communication generally are not privileged"); *State-wide Capital v. Superior Bank*, 2000 WL 20705 (S.D.N.Y. 2000); *Steingut v. Guarantee Trust Co. of New York*, 1 F.R.D. 723 (S.D.N.Y. 1941). This axiom applies to all documents relating to a communication, regardless of whether the document is dated and regardless of whether the communication is privileged.

In this case, to fully understand the chronology of events, and in particular the dates of Mr. Gluck's meetings and conversations with Rabbi Yemini, the defendant needs to know the dates of the events reflected on the documents. The

---

[2] All citations are to the page numbers referenced on the privilege log, Exhibit C.

3

absence of approximate dates on some of the privilege log entries hinders the defendant's understanding of the case and the resolution of the privilege issue.

The events at issue in this matter occurred over a relatively brief time period – October 2008 to August 2009. During this time, Mr. Gluck had conversations and meetings with his client and with the defendant. Mr. Gluck's responses to the defendant's assertions were based, at least in part, on information provided to him by his client. The dates of Mr. Gluck's discussions with his client help to flesh out the basis for certain statements and the manner in which subsequent events transpired.

Further, some of the undated documents refer to Mr. Gluck's notes re "case status" (##1, 4) or "conference with Rabbi Amitai Yemini" (##5, 7-9). As discussed more fully below, Mr. Gluck wore "two hats" in this case, one as Rabbi Yemini's counsel and a second as a government cooperating witness. While an attorney-client privilege may apply as to documents relating to Mr. Gluck as counsel to Rabbi Yemini, no privilege applies to Mr. Gluck's role as a cooperating witness and any discussions or documents relating to his cooperation are not privileged. Thus, if the undated notes refer to Mr. Gluck's cooperation with the government, they are not be privileged. Without the dates of the documents, however, this analysis is not possible.

Depending on the date, the notes may also relate to whether Rabbi Yemini waived his attorney-client privilege or instructed his attorney to reveal certain information to the defendant or government, thereby vitiating the privileged nature of the documents. However, without the date of the document, or an approximation of that date, it is not possible to have a complete and accurate understanding of the events. Indeed, in other pleadings, discussed below, Bird Marella claims that Rabbi Yemini authorized Mr. Gluck to make certain disclosures. The dates of their meetings will illuminate when those events occurred, and assist in the determination of whether the attorney-client privilege was waived.

4

Lastly, Bird Marella will not be harmed or prejudiced by providing approximate dates for the undated or partially dated documents. As noted above, the date of a privileged communication is not privileged, nor would the disclosure of an approximate date for undated or partially dated documents infringe on the attorney-client privilege. Bird Marella's privilege log already reveals the dates of most of the documents, and requiring the production of approximate dates for the remaining materials will only assist in the Court's and parties' understanding of the case and resolution of issues. Accordingly, the defense requests that the Court order Bird Marella to provide approximate dates for the undated or partially dated documents.

For its part, Bird Marella has approximated the *season* the undated documents were generated. This is wholly inadequate. The documents at issue concern the notes of an experienced attorney from a reputable firm concerning relatively recent events over a limited time period. The firm's file records and the contents of Mr. Gluck's notes likely place the described events in context, further assisting in the dating process. Mr. Gluck's calendar and the firm's unredacted billing records memorialize the meetings with Rabbi Yemini and the work performed, and should assist in the reconstruction of dates. Thus, it strains credulity to believe that Bird Marella's "best guess as to the approximate dates for the documents at issue" is to estimate whether the event occurred in the winter, summer, spring or fall.

3. Bird Marella's Position

Bird Marella produced a privilege log that includes all indicated dates for all withheld documents. Defendant is correct that privilege logs typically include dates but none of the cases cited by defendant require a party asserting privilege to guess or "testify" about a date that does not appear on the document. Instead, the cases merely require the withholding party to disclose the date *on* the document.

Second, defendant's argument is based on a faulty premise, namely that documents "may not be privileged" if they were created after Mr. Gluck reported the defendant's actions to the government. This is a complete *non-sequitur* because the privilege or work-product analysis and conclusion remains the same no matter whether the communication took place before or after Mr. Gluck reported the defendant.

Third, defendant reveals he says that the date of the documents will allow him to determine "the basis for certain statements" by Mr. Gluck, namely what Rabbi Yemini told Mr. Gluck on these subjects. Defendant reveals his true intent to use the guise of a privilege log to gain privileged information. Indeed, if the date of the communication allowed the defendant to learn its content, the date would be privileged. The privilege protects against the defendant learning the content of communications through an inferential process just as fully as it protects against direct disclosures of content.

Bird Marella and Chabad Israeli Center believe that their position is correct on the law. Nevertheless, in an effort to resolve this, and without waiving any privileges or work-product protections, Bird Marella states in the margin its best guess as to the approximate dates for the documents at issue.[3]

### B. Bird Marella's Withheld Documents

#### 1. Joint Statement of Issue

Before addressing the nature of this issue, it is important to understand the players involved. The investigation of Rabbi Yemini was assigned to AUSA Keri

---

[3] Organized by Privilege Log Bates number, 1, 2 = summer 2010; 4-10 = fall 2008; 11, 12 = 2010 (these documents previously had day and month indicated but no year); 30 = spring 2009; 45 = 2009 (this document had day and month indicated but no year); 47 = fall 2009. Further, document Bates numbered 48 is dated on the log as 1/14/09, which is the date that appears on the document. However, it appears that it should have been dated 1/14/10. Because Mr. Gluck's cooperation began in mid-July 2009, these estimates allow the defendant to place the withheld documents relative to the beginning of the cooperation.

Axel. Ms. Axel's supervisor was AUSA Curtis Kin. The investigation of Mr. Villalobos was assigned to AUSA Joseph Akrotirianakis. Benjamin Gluck is an attorney at Bird Marella who was primarily responsible for representing Rabbi Yemini and the Chabad Israel Center ("Chabad"), and later himself became a government witness. Gary Lincenberg, Peter Shakow and Jason Kogan are attorneys at Bird Marella who assisted in the representation of Rabbi Yemini and Chabad. Alicia Eastman is Mr. Gluck's assistant. David Willingham, Caldwell Leslie, is an attorney who represented Rabbi Yemini's son before the grand jury. Daniella Koiman is an immigration attorney who represented Malka Dasa. Kathy Grzegorek, Stone and Grzegorek, is an immigration attorney who provided advice to Mr. Gluck regarding Chabad Israeli Center. SA Gary Bennett is an FBI agent assigned to the investigation of the defendant.

Pursuant to an agreement with prior defense counsel, Bird Marella has already produced all notes of meetings or communications with the defendant. Pursuant to the privilege log, Bird Marella declines to produce the following items:

(1) Mr. Gluck's notes to himself on various topics (##1-4, 6, 10, 11, 12, 14-18, 59);

(2) Rabbi Yemini's or an unnamed Chabad employee's notes to Mr. Gluck (##10, 30);

(3) Mr. Gluck's notes of meetings and emails with Rabbi Yemini, Joseph Yemini (Rabbi Yemini's son), Fayge Yemini (Rabbi Yemini's wife) and an unnamed an Chabad employee (##5, 7-9, 13, 19-29, 31-32, 47, 58, 60-91);

(4) Mr. Gluck's notes of conversations and emails with David Willingham, Daniella Koiman and Kathy Grzegorek (##33-34, 43, 95-101, 102-14);

(5) Mr. Gluck's and Mr. Shakow's notes of government interviews of Rabbi Yemini and Chabad employees (##35-41, 44, 48-57); and

(6) Mr. Gluck's, Mr. Lincenberg's and Ms. Eastman's notes and emails of meetings and conversations with AUSAs Axel, Kin and Akrotirianakis (##43, 45, 46, 92-94).[4]

Bird Marella submits that these notes and emails are privileged, work product and/or joint defense. The defense asks that the Court order Bird Marella to produce some of the materials, identified below. Alternatively, the defense asks that the Court conduct an *in camera* review of the documents to determine whether they are subject to production. "To empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged. If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court. The court's discretion, however, is guided by the factors enumerated in *[United States v.] Zolin*." *In Re Grand Jury*, 974 F.2d at 1075 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). *Zolin* considered an effort to pierce the privilege based on a crime-fraud argument and held that once an initial showing is made,

> [t]he court should make that decision [whether to engage in an *in camera* review] in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. The district court is also free to defer its *in camera* review if it concludes that additional evidence in support of the crime-fraud exception may be available that is not allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings.

*Id.*

---

[4] As noted in footnote 3, the date on Doc. #46 was erroneously written as January 14, *2009*, and should be January 14, *2010*.

8

2. <u>Defendant's Position</u>

No doubt, the mental impressions and thought processes of Bird Marella attorneys acting in their capacity as counsel for Rabbi Yemini and Chabad, are work product. It is equally as clear, however, that Mr. Gluck served two distinctly separate roles in the visa fraud/Villalobos investigations: (1) counsel to Rabbi Yemini and Chabad, and (2) a government cooperating witness. As to the first role, the defense recognizes that Mr. Gluck and Rabbi Yemini had a bona fide attorney-client relationship and there may be matters protected from disclosure under the attorney-client privilege (although the defense also asserts that Rabbi Yemini has waived the privilege and that Mr. Villalobos' rights under the Confrontation Clause mandate the disclosure of privileged information).[5] As to the second role – Mr. Gluck acting in his capacity as government witness – the defense contends that the attorney-client privilege does not apply and all responsive documents should be ordered produced.

The following types or categories of documents contain communications that should be disclosed:

Bird Marella has withheld notes and emails which post-date (or appear to post-date) Mr. Gluck's cooperation with the government, which began on July 15, 2009. (See ##1-10, 35-46, 48-59, 72-91, 103-14.)[6] To the extent these materials

---

[5] The parties addressed their respective positions on the waiver and Confrontation Clause issues in the Joint Submission Re: Government's Motion to Preclude Inquiry into Privileged Communications ("Joint Submission"), filed on February 28, 2011 (Docket #123). To avoid duplication, the parties incorporate those arguments by reference. Because the Court's determination of those issues may also impact Bird Marella's and Chabad's obligations under the subpoenas, the parties respectfully suggest that the Court withhold ruling on the instant motion until the waiver and Confrontation Clause issues are resolved.

[6] In addition, we remind the Court that the defense cannot determine whether the undated or partially dated documents post-date Mr. Gluck's cooperation with the government. (##1-10, 30, 45.)

9

describe or relate to Mr. Gluck's role as a government witness, they are not privileged and should be produced.

Bird Marella has withheld notes and emails concerning Mr. Gluck's communications with Rabbi Yemini. To the extent Mr. Gluck's notes and emails describe or relate to Mr. Gluck's role as a government witness, they are not privileged and should be produced. (See ##5, 7-9, 10, 47.) Further, Bird Marella agrees that "information provided by a client to an attorney with the intention that it be disclosed to a third party is not protected by the attorney-client privilege. (Citations omitted)." Joint Submission at 7, 38 n.24. Thus, to the extent any notes or emails describe or relate to information that Rabbi Yemini or Chabad employees provided to Mr. Gluck or other Bird Marella attorneys with the intention that it be disclosed to third parties, they are not privileged and should be disclosed. (##1-10, 13, 19-32, 47, 58-94.)

Bird Marella has withheld notes and emails concerning Mr. Gluck's and other attorneys' communications with government prosecutors. (##43, 45-46, 92-94.) To the extent the notes merely record the attorney's mental impressions and thought processes, those materials, or portions thereof, may be work product. However, there is nothing privileged about a prosecutor's position on the nature of an investigation, the status of the investigation, or settlement negotiations of criminal allegations. Thus, to the extent the notes or emails reflect the prosecutor's or agents' statements, without including Mr. Gluck's or other Bird Marella attorneys' personal mental impressions and thought processes, those documents would not be privileged and should be produced.

Bird Marella has withheld Mr. Gluck's notes and emails with Rabbi Yemini's wife, Fayge Yemini, and son, Joseph Yemini. (##67-69, 71-91.) As best can be determined, Mr. Gluck did not represent Fayge Yemini or Joseph Yemini (who was represented by David Willingham of Caldwell Leslie & Proctor). Thus, these documents are not privileged and should be produced.

10

The defense asks that the Court order Bird Marella to produce all of the identified materials. Alternatively, the defense asks that the Court conduct an *in camera* review of the documents to determine whether they are subject to production. *In Re Grand Jury*, 974 F.2d at 1075. The defendant submits that, to the extent able, he has provided sufficient factual grounds for an *in camera* review, the volume of the reviewable material is relatively limited, the relative importance of Mr. Gluck and Rabbi Yemini to the case is manifest, and there is a likelihood that the evidence produced through *in camera* review, together with other available evidence, will establish that the privilege has been waived or that the defendant's rights under the Confrontation Clause warrant a piercing of the privilege.

3. <u>Bird Marella's Position</u>

Defendant is not entitled to any of the documents at issue here and, moreover, under his own cited authority, he has not even satisfied the standard required for an *in camera* review.

First, defendant's premise that Mr. Gluck's cooperation somehow changes the privilege inquiry is simply wrong. The fact that Mr. Gluck was taking direction from the government after mid-July 2009 in no way changes the fact that the Chabad Israeli Center and its agents still enjoy a privilege in their communications with their counsel. Defendant provides neither authority nor logic that would support the notion that the privilege inquiry is somehow changed by the fact that, for example, Mr. Gluck, at the government's direction, met with the defendant and gave him $50,000. The privilege analysis is the same.[7] Thus, if, for example, Mr.

---

[7] The standard formulation of the elements of the privilege is:
"When legal advice of any kind is sought
—from a professional legal advisor in his or her capacity as such,
—the communications relating to that purpose,
—made in confidence
—by the client,
—are, at the client's instance, permanently protected from disclosure by the client or by the legal advisor, unless the protection be waived."

11

Gluck and Rabbi Yemini discussed Rabbi Yemini's diversion agreement, this falls squarely within the privilege no matter whether Mr. Gluck had already agreed to the government's request to meet with Mr. Villalobos. In short, the defendant is wrong in claiming that from the date of the cooperation the privilege analysis is somehow different.

Apart from the cooperation argument, defendant complains that Bird Marella has withheld communications with Rabbi Yemini's wife and son. But both Rabbi Yemini's wife and his son work or have worked for the Chabad Israeli Center.[8] Their communications with the Center's lawyer regarding the Center's legal issues are well within the privilege. *See, e.g.,* Rutter Group Prac. Guide *Fed. Civ. Trials & Ev.* § 8:3437.

Defendant also asserts that Mr. Gluck's notes *may* not be protected by the work product doctrine. But the rule on work product protection of attorney notes is quite clear: unless the notes represent a verbatim transcript of a meeting, the notes are protected. As the Supreme Court held in *Upjohn*, when an attorney creates notes or memoranda of a statement, the notes necessarily include protected work product material because they "tend to reveal the attorney's mental processes" and are "permeated with his inferences." *Id.*, 449 U.S. at 399 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Revealing these is "particularly disfavored." *Id.* This is because the very nature of summarizing even a conversation or other factual information implicates work product. "When taking notes, an attorney often

---

(continued...)

Rutter Group Prac. Guide *Fed. Civ. Trials & Ev.* § 8:3400 (quoting *United States v. Martin* 278 F3d 988, 999–1000 (9th Cir. 2002). The privilege also applies to communications from attorney to client as long as they are based, at least in part, upon a confidential communication from the client to the attorney. *Id.*

[8] Indeed, Rabbi Yemini's son received a grand jury subpoena in connection with the underlying investigation.

12

focuses on those facts that she deems legally significant." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

In light of this well established rule, the defendant says nothing except to speculate that *perhaps* Mr. Gluck and his notes are somehow different from a typical attorney and his or her notes. Other than this sheer speculation, the defendant provides no basis for his remaining challenges to the privilege or work-product protection of the material on the privilege log. In this light, it is clear that the defendant has not even met the burden he set for himself at the outset, namely providing some "factual basis" that *could* trigger an *in camera* review. *In re Grand Jury* and *Zolin* make clear that a privilege log establishes a *prima facie* application of the privilege. Once that has been supplied, the burden is on the challenging party to show a "factual basis," namely more than pure speculation, that challenges the privilege. Unless that is done, an *in camera* review of the material is inappropriate. As the Ninth Circuit explained, *in camera* review "is an intrusion which must be justified" and [s]ome threshold must be met by the party contesting the application of privilege before the court examines the materials." *In re Grand Jury Investigation*, 974 at 1074. Here, the defendant provides nothing but speculation, which is far from the "factual basis" required by the Ninth Circuit.[9]

Bird Marella has satisfied the prima facie showing of privilege and work product and should not be compelled to produce the withheld documents. The defendant's motion should be denied.

///

///

---

[9] As set out earlier, even if the defendant *had* satisfied the factual basis requirement, the Court would not be obligated to provide an *in camera* review. And at least some of the relevant factors under *Zolin* would militate against such a review in any event. As addressed thoroughly in the separate briefing regarding the relevance of any attorney client material, this material's "relative [un]importance to the case" means that *in camera* review is not necessary. *See Zolin*, 491 U.S. at 572.

13

### C. Bird Marella's Billing Records

#### 1. Joint Statement of the Issue

Bird Marella has produced billing records in redacted form. (A sampling of the billing records is attached as Exhibit D.) The produced billing records show entries for work related to Mr. Gluck's discussions with Mr. Villalobos or contacts with the government concerning the investigation of Mr. Villalobos. Bird Marella deleted all entries relating to its work on the federal criminal investigation of Rabbi Yemini or Chabad. Defendant submits that Bird Marella should provide the redacted information.

#### 2. Defendant's Position

The portions of an attorney's bills which reveal the "identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege" while "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of the law, fall within the privilege." *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citing *In re Grand Jury Witness (Salas and Waxman)*, 695 F. 2d 359, 361-62 (9th Cir. 1982)). The attorney-client privilege does not extend to the general nature of the legal services a lawyer performs. *United States v. Brickey*, 426 F.2d 680, 685 (8th Cir. 1970) ("Acts or services done by the attorney for his client do not come within the privilege because no private professional communication is entailed"); *United States v. Cotton*, 306 F.2d 633, 636 (2d Cir. 1962) (attorney required to give "general responses, such as 'litigation,' drafting of documents,' 'tax advice' and the like" but not specific details).

In *Clarke*, the Court held that the billing records were discoverable because the type of information they contained – including *"the general nature of the*

14

*services performed*" – did not "reveal specific research or litigation strategy which would be entitled to protection from disclosure." 974 F.2d at 130 (emphasis added). In contrast, in *Chaudhry v. Gallerizzo*, the Court, after analyzing *Clarke*, concluded that the legal bills at issue were protected by the privilege because they "revealed the identity of the federal statutes researched." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999).

The defense cannot know the precise information redacted from the Bird Marella billing statements. However, based on the general descriptions provided in the Bird Marella bills about the Villalobos investigation ("telephone conference with A. Villalobos," "meet agents," "prepare for meeting," and the like), it appears to be Bird Marella's (or Mr. Gluck's) practice to limit the descriptions in its billing statements to "the general purpose of the work performed" and not to include "litigation strategy, or the specific nature of the services provided." Accordingly, the defense submits that the general information in the Bird Marella billings concerning the government's visa fraud investigation of Rabbi Yemini and Chabad should also be produced. Alternatively, the defense asks that the Court conduct an *in camera* review of the documents to determine whether they are subject to production. *In Re Grand Jury*, 974 F.2d at 1075.

3. Bird Marella's Position

The defendant already possesses "identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed." *Clarke*, 974 F.2d at 129. Indeed, because Bird Marella provided, without waiver, all entries that relate to communications with the defendant or the government, the defendant has even more than that. Thus, he is entitled to nothing else. The defendant is not entitled to "bird dog" the representation provided by Bird Marella by obtaining information that would identify witnesses, specific services, or the like. Everything required to be disclosed under *Clarke* has already

been disclosed. And because the defendant establishes no "factual basis" under *Zolin* he is not entitled to *in camera* review either.

Dated: March 17, 2011

Respectfully submitted,

LIGHTFOOT STEINGARD & SADOWSKY LLP

By: /S/ - *Richard M. Steingard*
    Richard M. Steingard
    Attorneys for Defendant
    Alfred Nash Villalobos

Dated: March 17, 2011

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS & LINCENBERG

By: /S/ - *Gary Lincenberg*
    Gary Lincenberg
    Attorneys for Bird Marella
    and Chabad Israel Center